Jake Wilson v. The State.

1—A grand jury, after serving about two weeks, was discharged by order of the court. At a subsequent day of the same term of the court, the same persons who composed the grand jury were re-assembled in court, and the court by order set aside its former order discharging the grand jury, and directed them to proceed to the discharge of their duties as originally charged. The indictment in this case was for murder, committed in the interim between the discharge of the grand jury and its re-organization, and was found by the grand jury after being so re-organized. *Held*, that there was no error in the proceedings, and that the indictment was found by a lawful grand jury.

2—A confession voluntarily made, after the accused has been properly cautioned that it will be used against him, is made legal evidence by the Code of Criminal Procedure; and it is immaterial whether it was made while the accused was in jail, or in the custody of an officer, or elsewhere.

3—It must be presumed by this court, in the absence of anything in the record to the contrary, that before the confession was suffered to go to the jury as evidence, it was made manifest to the court below that the conditions required by the law were fully met.

4—This court reviews the evidence, and concludes that it fully sustains the conviction for murder in the first degree.

Appeal from McLennan. Tried below before the Hon. A. J. Evans.

The appellant was indicted, tried and convicted at the February term (1869) of the District Court of McLennan county, of the murder of John Johnson. The facts of the homicide and the evidence at the trial are clearly stated in the opinion, so far as it is material to state them.

But in order to elucidate the ruling with reference to the grand jury by whom the indictment was preferred, it is deemed

advisable to exhibit a copy of the order made by the court below, on the resumption of its functions by the grand jury. The order was as follows:

"Be it remembered, that the presiding Judge having, in open court, stated to the foreman of the grand jury, which was sworn and charged on the first day of the present term of the court, that if his body would assemble and announce to the court that they were willing to proceed to a further discharge of their duties as grand jurors, that the court would receive presentments at their hands:

"And now here to-day, in open court, appeared the foreman of the grand jury, accompanied by a quorum of the grand jury, being the same foreman and grand jury that were sworn and charged as such on the first day of the present term of the court, and upon their request were discharged on the 16th day of December, 1868, and being so in open court, indicate to the court a willingness to proceed with their duties as a grand jury; and it appearing to the court that grave crimes have been committed in the county of McLennan and State of Texas during the sitting of this court, and since the aforesaid discharge of said grand jury, it is now here ordered that the order of this court, made on the 16th day of December, A. D. 1868, and at the present term of this court, discharging the said grand jury, be set aside and revoked; and that the grand jury proceed on to the discharge of their duties as originally charged."

The motions of the defendant in arrest of judgment and for a new trial being overruled, he appealed.

No briefs came to the hands of the Reporter.

LINDSAY, J.—At a term of the District Court of McLennan county, begun on the 30th day of November, 1868, and ending on the 27th day of February, 1869, the grand jury returned into court a bill of indictment against Jake Wilson, the appellant, for the murder of John Johnson, on the 12th day of Jan-

nary, 1869. The accused was arrested and put upon his trial at the same term; and, upon the evidence and charge of the court, he was found, by the petit jury, "guilty of murder *in the first degree*," and the judgment of the court was, thereupon, pronounced; from which judgment, the prisoner has appealed to this court.

There were several exceptions taken to the rulings of the court in the progress of the trial; and, after the return of the verdict, a motion in arrest of judgment was made by the counsel for the prisoner, upon the ground that the grand jury was an illegal one—not having been impanneled according to law. The alleged reason of the illegality of the grand jury is, that having been impanneled, sworn and charged at the commencement of the term, on the 30th day of November, 1868, and, by an order of the court, finally discharged on the 16th of December, 1868; and that, by another order of the court, on the 2d day of February, 1869, during the continuance of the term of the court, the same persons were reassembled, and resumed the duties of a grand jury for that term. There was no error in this proceeding. It violates no rule of law, nor any positive statute. By the Code, Art. 2815, Paschal's Dig., if, *for any cause*, there should be a *failure* to select and summon a grand jury in the manner pointed out by the statute, the judge is given the authority by law to cause the sheriff to summon as many as twenty persons to constitute a grand jury, in order, no doubt, that there may be no failure in the administration of the criminal law. If, however, the requisite number of persons, known to the judge to be qualified, should happen to be *in attendance on court* at the time, he may well dispense with the issuing of a writ to have them summoned, and forthwith organize them into a grand jury; and this, too, even of persons who may not have been selected for the grand jury in the usual mode prescribed by the statute. If such a grand jury would be a legal one, much more would a grand jury composed of persons so selected, (as was the case in this instance,) who happen to be *in attendance on the court*. There

is nothing substantial in this objection, and the motion was correctly overruled.

Failing in this motion, a motion was made for a new trial. The causes alleged for this application were, first, the admission of the confessions of the defendant before the jury as evidence; second, the verdict was against law and evidence; third, the charge of the court was contrary to law.

The court has searched the record thoroughly, and with deliberate care, to ascertain whether all, or either, of these causes are well-founded, and to determine whether any such errors have been committed as might have worked injustice to the prisoner, and have prevented a fair and impartial trial of his case.

In regard to exceptions to the introduction of the confessions of an accused as evidence against him, it is always difficult for an appellate court, which has not the witness before it, to determine, without a preliminary inquiry of the witness, whether all the conditions required existed at the time of the confession, to give it validity as legal evidence. Much has to be confided to the scrutiny of the presiding judge, who must be the interlocutor to ascertain if the confession was voluntarily made, after the accused was properly cautioned that it might be used against him. If it be so voluntarily made after the proper caution has been given—then, whether it be made in jail while in the custody of an officer, or elsewhere—the evidence is made legal by the Code. In this case it is stated in the record that the confession was so voluntarily made, after being duly cautioned by the officer who had him in custody. Apparently, this fulfills the requirement of the statute, and we must presume that, in the interlocution of the court, it was made manifest that the conditions required by law were fully met before the court suffered the confession to go to the jury as evidence. Besides, when he was not in jail, nor in the custody of an officer, nor in " any other place of confinement," in the legal sense of these terms, he made a similar confession of the deed of killing, and of the motives which prompted it. Independent

of all this, the circumstantial evidence adduced was fully in accord with his confession, and was sufficient of itself to establish his guilt and justify the verdict of the jury.

As to the charge of the court, it was full, ample and complete, and embodied, in a very intelligible form, readily to be apprehended by the jury, all the law applicable to the facts submitted for the consideration of the jury.

The court, after a calm and dispassionate survey of all the facts presented in the record, and after a due consideration of the law defining the nature and character of those facts, can not well perceive upon what hypothesis either court or jury could come to any other conclusion than the guilt of the prisoner of *murder in the first degree.*

It was in proof that he had been in the habit of violating the most sacred rights of the deceased. Not content with this, to remove the obstacle to his guilty pleasures, he had repeatedly threatened to take the life of the deceased. The circumstances show that he had made preparation to carry his fell purpose into execution. An half hour before the killing, at the place where he had been, and was then living, about six or eight hundred yards from the house of the victim, under pretence that he heard a "big fuss" at the house of the deceased (though none else who were present heard it), he took down his gun from the rack, started in that direction, and in half an hour from the time of his departure the report of a gun was heard by the company which he had left. Half an hour after the report of the gun he re-appeared and reiterated that there was a "big fuss" there, and started back again in company with another, and reloaded one barrel of his gun on the way. Reaching the place, he declined to go in the house; his companion entered and found the dead body lying upon the floor, slain by a gun-shot wound. Returning immediately to the place of his former residence, he mounted his horse and rode to a place some miles off. It was in proof, by a witness at the deceased's house, that there was no noise there, nor any difficulty or disturbance at the time prisoner was asseverating that

there was a " big fuss " there.   Taking all these circumstances, with many other minute details, all pointing in one direction, it would have been most extraordinary, and an opprobrium upon the system of trial by jury, if a verdict of " guilty of murder in the first degree " had not been returned.   Wherefore the judgment is affirmed, and the District Court is ordered to pronounce the sentence of the law.

Affirmed.